IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

STANLEY BOCLAIR,

        Plaintiff,

v.

Case No. 18-cv-2084-NJR

JOHN BALDWIN, FRANK
LAWRENCE, RANDY PFISTER,
ROBER MUELLER, SANDRA FUNK,
AIMEE LANG, BRANDY TRIPP, REVA
ENGELAGE, ANGELA CRAIN, and
HOLLY HAWKINS,[1]

        Defendants.

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Stanley Boclair, an inmate with the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. He was allowed to proceed on two counts: a First Amendment retaliation claim (Count 1) and an Eighth Amendment deliberate indifference claim (Count 3).[2]

This matter is before the Court on Brandy Tripp's motion for summary judgment as to Count 3 (Docs. 187, 188). Boclair filed a response (Doc. 209) in opposition to the motion. Tripp filed a reply (Doc. 210).

---

[1] Brandy Tripp has identified herself by her proper name. The Clerk of Court is DIRECTED to CORRECT Tripp's name on the docket.

[2] Boclair's Eighth Amendment unconstitutional conditions of confinement claim in Count 2 was dismissed for failure to state a claim (Doc. 6, pp. 4-5).

FACTUAL BACKGROUND

On November 16, 2018, Boclair filed his Complaint alleging claims of retaliation and deliberate indifference to his medical needs. As it relates to the claims against Tripp, Boclair was allowed to proceed on the following single count:

Count 3:     Eighth Amendment deliberate indifference to medical needs claim against Brandy Tripp, Aimee Lang, Reva Engelage, Angela Crain, and Holly Hawkins for failing to provide Boclair with care for his vomiting and diarrhea on December 11, 12, 13, 14, and 15.

(Docs. 1, 6, 47, 81).[3] Boclair later amended his Complaint, but only to add additional factual allegations as to his retaliation claim (Docs. 30, 33). The Amended Complaint did not change the claim against Tripp.

Menard procedures allow an inmate to report non-emergency health problems through a sick call slip (Doc. 209-1, p. 78). The sick call request includes the date, name, number, cell location, and medical complaint (*Id.*; Doc. 188-2, p. 20). The slip can be placed in the sick call box in the cell house and given to any security staff, counselor, or nurse (*Id.*; Doc. 188-2, p. 20). The assigned cell house nurse reviews the slips daily and places inmates on the nurse sick call line for the next day (*Id.*). There is only one nurse each shift assigned to a cellhouse to review sick call slips and conduct sick call (Doc. 188-2, p. 22). According to Tripp, requests requiring immediate attention are called to sick call prior to the next day's line (Doc. 188-2, p. 20). She acknowledged that an inmate with

---

[3] Boclair initially identified the defendants in Count 3 as Jane/John Doe Nurses (Doc. 6, p. 3). He later identified the nurses (Docs. 47, 81). Aimee Lang, Reva Engelage, Angela Crain, and Holly Hawkins also have a pending summary judgment motion on the claims against them, but the motion is not yet ripe (Docs. 189, 192).

uncontrollable bowel movements and vomiting would be considered an acute condition requiring immediate review (*Id*. at p. 21).

Boclair testified that to put in a sick call request, he would inform the nurse that brings his medication or he would put the request in the sick call box (Doc. 188-1, pp. 36-37). He usually either gave the nurse handing out medications his sick call request or would verbally request a sick call (*Id*.). If he had an emergency request, Boclair testified he could go through a gallery officer or get a staff member's attention for care (*Id*. at p. 38).

At sick call, the nurse takes the inmate's vitals and addresses the inmate's issues. They are either referred to the physician or the nurse will address the issue if it is within their "scope of practice"(Doc. 188-2, p. 22). Tripp testified that she could provide over-the-counter medications, but anything further required a referral to a doctor (*Id*. at pp. 22-23). The sick call log worksheets are used to log which inmates were seen on sick call, what they were seen for, and how they were treated (*Id*. at pp. 26-27).

Boclair testified that he became ill on December 9, 2016, after eating (Doc. 188-1, p. 44). He was hot, sweating, and vomiting (*Id*. at p. 45). His vomiting was constant throughout the day and night (*Id*.). He submitted sick call requests on December 12, 13, 15, and 16, but testified that he was not quite sure the exact dates (*Id*. at pp. 44, 48). His illness dissipated on December 17, 2016 (*Id*. at pp. 45-46). He testified that during his illness, from December 9 through December 16, he requested sick call, written and verbally, through the nurses that brought his medication and his gallery officer (*Id.* at p. 49). He believes that his written requests handed to the nurse passing out drugs should have been delivered to Tripp (*Id*. at p. 50). He gave the nurse his requests, but he could

not recall on what dates, but it was in the morning (*Id.*). He also testified that inmates in the cells next to his also requested medical attention for him (*Id.* at pp. 47, 49). On December 15, 2016, Boclair also submitted a grievance about his condition, indicating he submitted his first sick call request on December 11, 2016 (Doc. 209-3, p. 1). He handed in sick call notes to the healthcare professional handing out his medications on December 12 and 13 (*Id.*). According to the grievance, on December 14, the nurse handing out his evening medication took his sick call request (*Id.* at pp. 1-2). Boclair does not have any copies of the sick call requests he submitted (Doc. 188-1, p. 54).

On December 15, 2016, Boclair also met with Dr. Diana Tracy for psychiatric care (Doc. 188-3, pp. 1-2). Boclair stated in his affidavit that he informed her of his illness and that Dr. Tracy indicated she would inform the nurse on duty (Doc. 209-4). Although the medical records indicate that Dr. Tracy met with Boclair on that date, there is no indication in the records of his complaints of illness (Doc. 188-3, pp. 1-2).

Tripp is a registered nurse at Menard Correctional Center (Doc. 188-2, pp. 7-8). She was assigned to North II, where Boclair was housed, during December 2016 (*Id.* at pp. 21-22). She was assigned to the Nurse Sick call, 7:00 a.m. – 3:00 p.m. shift for December 12, 13, 15, and 16 (Doc. 209-2, pp. 1-2; Doc. 188-5, pp. 3, 6, 11, 17, and 20). Because North II is a locked unit with a segregation gallery, Tripp walks the whole cellhouse to make sure no one is in distress or needs immediate attention (*Id.* at p. 30). Tripp acknowledged that it was her custom and practice to walk the galleries but does not recall if she walked past Boclair's cell during her shift on the dates in question (Doc. 209-2, p. 2). She testified that she did not recall coming across Boclair during her rounds and did not even recognize

his name prior to the lawsuit (Doc. 188-2, p. 31). On December 15, 2016, Tripp was also assigned to "First Aid Relief" which meant she would treat patients for medical emergencies. She was only assigned to provide relief if additional help was needed (Doc. 209-2, pp. 2-3). On December 16, 2016, she was also assigned to "Infirmary Relief" which would include assisting the nurse assigned to the infirmary with taking vitals, monitoring patients, and responding to emergencies within the infirmary (*Id.* at p. 2).

The sick call log worksheets do not reflect any requests from Boclair between December 9, 2016 and December 22, 2016, nor do they reflect that he was seen on a nurse sick call (Doc. 188-4). Tripp did not recall seeing any requests from Boclair during December 2016 (Doc. 188-2, p. 57). It was her custom and practice to review all sick call requests that she collected and log the requests. (*Id.* at p. 61). Those requests were collected from the boxes at the end of the gallery or from an officer if the inmate gave the request directly to an officer (*Id.* at pp. 65-66). Tripp testified that it was not their policy to receive the requests directly from an officer, but the officer would sometimes bring an issue up with the nurse if an inmate voiced an issue (*Id.* at pp. 65-66). Any inmate that was seen on sick call via a verbal request would also be logged in the sick call log (*Id.* at p. 63). She further testified that an inmate experiencing acute symptoms could request treatment from security staff or other medical staff (*Id.* at p. 63). She also testified that during her walks of the gallery if another inmate reported a medical emergency, she would check on the inmate in question (*Id.* at pp. 63-64).

On December 22, 2016, Boclair saw Dr. Siddiqui for his condition (Doc. 188-3, p. 9). He informed Dr. Siddiqui that his sickness started on December 9, 2016, and the illness

lasted for 6-7 days (*Id.*). Boclair was diagnosed with gastritis or diarrhea that had resolved (*Id.*).

## LEGAL STANDARDS

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *Archdiocese of Milwaukee v. Doe*, 743 F.3d 1101, 1105 (7th Cir. 2014) (citing Fed. R. Civ. P. 56(a)). A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). *Accord Bunn v. Khoury Enter., Inc.*, 753 F.3d 676, 681-82 (7th Cir. 2014).

In assessing a summary judgment motion, a district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Anderson*, 699 F.3d at 994; *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). As the Seventh Circuit has explained, as required by Rule 56(a), "we set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor." *Spaine v. Community Contacts, Inc.*, 756 F.3d 542 (7th Cir. 2014).

### B. Deliberate Indifference

Prison officials violate the Eighth Amendment's proscription against "cruel and unusual punishments" if they display deliberate indifference to an inmate's serious medical needs. *Greeno v. Daley*, 414 F.3d 645, 652–53 (7th Cir. 2005) (quoting *Estelle v.*

\
Page 6 of 9

*Gamble*, 429 U.S. 97, 104 (1976) (internal quotation marks omitted)). *Accord Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009) ("[D]eliberate indifference to serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution."). A prisoner is entitled to reasonable measures to meet a substantial risk of serious harm — not to demand specific care. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

To prevail, a prisoner who brings an Eighth Amendment challenge of constitutionally-deficient medical care must satisfy a two-part test. *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011) (citing *Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006)). The first prong that must be satisfied is whether the prisoner has shown he has an objectively serious medical need. *Arnett*, 658 F.3d at 750. *Accord Greeno*, 414 F.3d at 653. A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). *Accord Farmer v. Brennan*, 511 U.S. 825, 836 (1994) (violating the Eighth Amendment requires "deliberate indifference to a substantial risk of serious harm.") (internal quotation marks omitted).

Prevailing on the subjective prong requires a prisoner to show that a prison official has subjective knowledge of—and then disregards—an excessive risk to inmate health. *Greeno*, 414 F.3d at 653. A plaintiff need not show the individual literally ignored his complaint, just that the individual was aware of the serious medical condition and either intentionally or recklessly disregarded it. *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). The standard is a high hurdle, requiring a "showing as something approaching a total

unconcern for the prisoner's welfare in the face of serious risks." *Rosario v. Brawn*, 670 F.3d 816, 821 (7th Cir. 2012).

## ANALYSIS

Simply put, there is no evidence that Tripp had knowledge of Boclair's illness and acted with deliberate indifference.[4] Boclair testified that he submitted sick call requests to the nurses that passed out his medication, but Tripp was not one of those nurses. Nurses handed out medication at 4:00 a.m. and 7:00 p.m., while Tripp worked the 7:00 a.m. to 3:00 p.m. shift (Doc. 188-2, p. 65). And there are no records suggesting that Tripp received sick call requests from Boclair (Doc. 209-4; Doc. 188-3, pp. 1-2). If she had, Tripp testified that she would have logged those requests in the sick call log worksheet. The worksheet does not include any mention of Boclair's request (Doc. 188-4, pp. 1-13).

Boclair does not recall speaking to Tripp and Tripp testified that she routinely made rounds through the cellhouse during her shift. The only evidence in the record of any interaction between Boclair and Tripp is when she passed out his medication on December 3, 2016, well before the beginning of his illness (Doc. 188-3, p. 14). Although Boclair maintains that if Tripp walked the cellhouse as she claims she would have seen Boclair, there is no evidence to suggest that she actually saw Boclair and noticed his condition. Tripp "can only be liable for what she personally knew and did, and cannot be liable for the knowledge or actions of her colleagues"; nothing in the record suggests that

---

[4] For purposes of this analysis, the Court assumes that Boclair could demonstrate that his vomiting and diarrhea constituted a serious medical need. Tripp testified that diarrhea and vomiting can be a serious medical need (Doc. 188-2, p. 21).

Tripp was aware of Boclair's need for medical care. *Turner v. Cox*, 569 F. App'x 463, 468 (7th Cir. 2014) (citing *Burks v. Raemisch*, 555 F.3d 592, 593-94 (7th Cir. 2009)). Thus, Tripp is entitled to summary judgment.

### CONCLUSION

For the reasons stated above, Tripp's summary judgment motion (Doc. 187, 188) is **GRANTED**. The Clerk of Court is **DIRECTED** to enter judgment at the close of the case.

**IT IS SO ORDERED.**

**DATED:   August 15, 2022**

_____

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**